**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LANCE REBERGER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ESP GENERAL PRACTICIONER<br>MICHAEL KOEHN, *et al.,*<br>　　　　　　　　　　Defendants. | 3:15-cv-00551-MMD-CBC<br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Lance Reberger ("Reberger") against Defendants Romeo Aranas, Dawn Jones, Michael Koehn, and Teresa Stark (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF No. 189.) Reberger opposed, (ECF No. 247), and Defendants replied. (ECF No. 255). Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted.[2]

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Defendants filed their motion on March 27, 2018 (ECF No. 189). Plaintiff was granted two extensions of time (for a total of sixty-nine days) to file an opposition (ECF Nos. 243 & 263). Defendants also received an extension of time to file a reply (ECF No. 263). Additionally, requested an was granted additional copies (ECF Nos. 199, 219 & 240), and permission to file an overlength opposition brief (ECF No. 246 & 263). Plaintiff filed supplemental exhibits (ECF Nos. 252 & 263) which the court has reviewed in preparing this report and recommendation. Finally, during this same time period, plaintiff requested subpoenas (ECF Nos. 196, 213 & 214), an *in camera* inspection of defendants' interrogatory responses (ECF No. 203), sanctions (ECF No. 205, 223, 231, & 248), filed a motion to strike (ECF No. 194), a motion to dismiss his motion for preliminary injunction (ECF No. 208), and defendants moved to quash subpoenas (ECF No. 245).

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

Reberger is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at Ely State Prison ("ESP"). (ECF No. 8.) However, the events giving rise to this case took place at ESP and at High Desert State Prison ("HDSP") in Indian Springs, Nevada. (*Id.*) On November 8, 2015, Reberger submitted a civil rights complaint pursuant to 42 U.S.C. §1983 together with a Motion for Leave to two Proceed in forma pauperis. (ECF No. 8.) In the complaint, Reberger asserted two claims for relief against Defendants. (*Id.*) Reberger sought monetary damages and injunctive relief. (*Id.*)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Reberger's complaint on June 15, 2016, which determined both claims could proceed. (ECF No. 9.) In the screening order, the court allowed Reberger to proceed on the following claims: (1) Count I, a deliberate indifference claim based on the Eighth Amendment; and (2) Count II, a retaliation claim based on the First Amendment. (*Id.*)

Between 2015 to the present, the parties have engaged in extensive and protracted litigation. This has included the filing of various motions by both Reberger and Defendants on a variety of topics – including various motions for preliminary injunctions, discovery motions, motions for reconsideration and the like.

Defendants have now filed a second motion for summary judgment, which seeks dismissal of all claims. (ECF No. 189.) The factual basis of each of these claims is as follows:

### B. Factual Background Related to Count I

In Count I, Reberger asserts Defendants are placing him in imminent danger by refusing to allow him to have his HIV medications "Keep on Person"[3] ("KOP"). (ECF No. 8.) Specifically, Reberger asserts that his HIV medications are "required to be consumed with

---

[3] NDOC Administrative Regulation 635.01(2) states: Inmate patients who are mentally and physically capable may have the privilege of self-administering some medications (keep on person or KOP).

2

1  food every 12 hours – no exceptions" (*Id.*, at 4), but "ESP nurses administer all [his] medications daily anywhere from 9 ½ to 16 hours apart, not the 12 hours apart as required by Abbvie company policy." (*Id.* at 5.) Reberger asserts that Defendants refused to provide [him] his KOP's especially his HIV medications and they are trying to make his HIV meds resistant where [he] will progress to AIDS with untreatable infections leading to hospitalization and death. (ECF No. 8 at 6.) He further asserts that his viral load, CD4-T cell, Red Blood Cell, White Blood cell, and Cholesterol counts have "changed drastically and his HIV meds are beginning to not work any longer due to all the time differences." (*Id.*, at 5.) Reberger alleges an Eighth Amendment violation. (*Id.*)

### C. Factual Background Related to Count II

In Count II, Reberger asserts Defendants retaliated against him for filing grievances against Dr. Koehn and Aranas. (ECF No. 8, at 12.) Specifically, Reberger asserts that he "has written prison kites to Koehn and Aranas for KOP's of all his required medications and they both have refused to order [him] to possess his KOP's retaliating for past grievances filed and Koehn [is] retaliating for being previously overruled by the previous medical director, Bruce Bannister." (*Id.* at 9.) Further, Reberger asserts that if his HIV medications continue to be delivered at irregular times, he will "become resistant over time which forces [his] HIV to develop into AIDS which leads to many painful HIV infections, hospitalization and eventual death which is what Koehn and Aranas seek because of [his] grievances filed against them, and Koehn is still angry [about] being overruled by [Bannister]." (*Id.* at 6 – 7.) Although Reberger never filed grievances against Jones or Stark, he asserts that they too are complicit because they "are following Koehn's orders trying to hurt [him]." (*Id.* at 3.) Reberger alleges a First Amendment violation. (*Id.* at 12.)

### D. Defendants' Motion for Summary Judgment

On March 27, 2018, Defendants filed a motion for summary judgment seeking dismissal of all claims. (ECF No. 189.) As to the deliberate indifference claim (Count I), Defendants argue they were not deliberately indifferent to Reberger's serious medical

1  needs because they provided him with his HIV medication as prescribed and in accordance
2  with the drug manufacturer's recommendations. (*Id.* at 7 – 9.) Defendants also argue that,
3  even if there are issues of fact on this claim, they are entitled to qualified immunity because
4  they were not on clear notice that delivering a drug as prescribed and at the times
5  recommended by the manufacturer would be deemed a constitutional violation. (*Id.* at 10 –
6  13.)

7  As to the retaliation claim (Count II), Defendants assert summary judgment should
8  be granted because there was no adverse action against Reberger. (*Id.* at 9 – 10.) While
9  Defendants denied Reberger's request to have his HIV medication KOP, medical staff still
10 delivered his prescriptions to him as prescribed, and at the times recommended by the drug
11 manufacturer, thus contrary to Reberger's claims, he was not adversely affected by their
12 decision. (*Id.*)

13 In response, Reberger argues that summary judgment should not be granted. (ECF
14 No. 247.) He broadly argues Defendants' undisputed facts are false, Defendants'
15 procedural history is incorrect, Defendants' account of his medical history is incorrect,
16 Defendants' legal standard is incorrect, and Defendants' witness declarations are false.
17 (ECF No. 247.)

18 In reply, Defendants argue much of Reberger's factual allegations are unsupported
19 by admissible evidence and must be disregarded when ruling on the summary judgment
20 motion. (ECF No. 255 at 3 – 14.) Defendants also reiterate their arguments related to their
21 lack of deliberate indifference, the lack of adverse actions against Reberger, and their
22 entitlement to qualified immunity. (ECF No. 255 at 15 – 18.)

23 **II.      LEGAL STANDARD**

24 Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*
25 *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants
26 summary judgment when the record demonstrates that "there is no genuine issue as to
27 any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp.*
28

*v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere

existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    A.   Count I - Deliberate Indifference

        1.   *Legal Standard*

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of a prisoner. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.2012). To meet the objective standard, the denial of a plaintiff's serious medical need must result in the " 'unnecessary and wanton infliction of pain.' " *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence

of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). A difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Circ. 1981). The conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she must also draw that inference." *Id.* at 837. The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or unintentional failures to provide adequate medical care . . . ". *Estelle*, 429 U.S. at 105. Finally, the plaintiff must prove that he was harmed by the indifferent actions, though the harm need not be substantial. *Jett*, 439 F.3d at 1096.

2.  *Analysis*

Reberger asserts that Defendants were deliberately indifferent to his serious medical needs when they refused to allow him to have his HIV medications KOP because he needs to take them at precise 12-hour intervals, but nurses deliver medications from 9 1/2 to 16 hours apart. (ECF No. 8 at 5.) As a result of the medication timing, Reberger alleges that his HIV is worsening. (*Id.*) Defendants argue they were not deliberately indifferent to Reberger's serious medical needs because they deliver his HIV medications

1  within the drug manufacturer's recommended window and as prescribed. (ECF No. 189
2  at 7 – 9.)

3  Reberger's argument centers around his assertion that his HIV medications are
4  "required to be consumed with food every 12 hours – no exceptions." (ECF No. 8 at 4.)
5  In support of his assertion, Reberger cites only to an Abbvie company policy in a letter he
6  received. (ECF No. 247 at Ex. K-1.) Reberger wrote to Abbvie, the drug manufacturer,
7  requesting their definition of "twice-daily dosing" as it related to his HIV medication —
8  Norvir. (*Id.*) Abbvie's response reads: "*Generally,* multiple daily doses should be evenly
9  divided *unless otherwise stated by the prescriber*. Twice-daily administration refers to
10 administration of the medication every 12 hours." (*Id.*) (emphasis added). Contrary to
11 Reberger's assertion, Abbvie company policy does not state that Norvir *must be*
12 administered at precise 12-hour intervals without exception. (*Id.*) Rather, it states that
13 "generally" the doses should be divided, "unless otherwise stated by the prescriber." (*Id.*)
14 Thus, there are some situations when Norvir will not be administered at 12-hour intervals,
15 and the prescriber may choose a different time frame. Reberger has provided not other
16 admissible evidence to support his assertion that this medication "must be" administered
17 every 12 hours.

18 Defendants argue Reberger is unable to satisfy either the objective or subjective
19 prong of the deliberate indifference test. (ECF No. 189 at 7 – 9.)  Although Reberger
20 asserts that he must take his HIV medication at precise 12-hour intervals, the letter he
21 received from the Abbvie states the prescriber can decide to administer Norvir at intervals
22 other than every 12 hours. (ECF No. 247 at Ex. K-1) Further, the declaration of Carol
23 Meyer, the nurse practitioner who prescribes Reberger Norvir, states that he takes his
24 HIV medications "between the hours of 5-7 a.m. and 5-7 p.m. … This regiment is
25 appropriate for the management of his HIV." (ECF No. 189 at Ex. C, ¶ 5.)

26 To satisfy the objective prong, Reberger would need to demonstrate that failure to
27 treat his condition could result in further injury or the unnecessary and wanton infliction of

pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To satisfy the subjective prong, he would need to demonstrate that Defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The court agrees Reberger cannot satisfy either the objective or subjective prongs because Defendants provided him with his HIV medications as prescribed. Therefore, Reberger can present no facts to show Defendants failed to treat his condition, or that Defendants disregarded a risk by failing to take steps to abate it. (ECF No. 189 at 7 – 9.)

Defendants assert the disagreement between Reberger and themselves about *when* his HIV medications must be administered is a "mere difference of opinion …among his treating physicians…and Reberger, who is not a medical clinician." (ECF No. 255, at 16.) Since a "difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference," Defendants are correct that Reberger is unable to satisfy the deliberate indifference test. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Circ. 1981). Thus, Defendants cannot be found to be deliberately indifferent towards Reberger's medical needs and the Court recommends Defendants' Motion for Summary Judgment as to Count I be granted.

    B.    Retaliation

        1.    *Legal Standard*

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A plaintiff must submit probative evidence to establish a crucial link in the logical chain to support a finding of retaliation. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)

2. *Analysis*

Reberger asserts that Defendants retaliated against him by refusing his request to have his HIV medications KOP after he filed grievances against Dr. Koehn and Aranas. (ECF No. 8 at 12.) Although Reberger only filed grievances against Dr. Koehn and Aranas, he asserts that Jones and Stark are complicit because they "are following Koehn's orders trying to hurt [him]." (ECF No. 8 at 3.) Defendants argue that they did not take any adverse actions against Reberger. (ECF No. 189 at 9 – 10.) Accordingly, Defendants argue Reberger's retaliation claim must fail. (*Id.*)

Like Reberger's deliberate indifference claim, his retaliation claim centers around his assertion that his HIV medication is "required to be consumed with food every 12 hours – no exceptions." (ECF No. 8 at 4.) Reberger asserts that nurses administer medications daily "anywhere from 9 ½ hours to 16 hours apart" so the only way he can ensure that his HIV medications are taken at 12-hour intervals is to have them KOP. (*Id.* at 4 – 5.) Reberger further asserts that by refusing to administer his HIV medications precisely 12 hours apart, Defendants are attempting to "force [his] HIV to develop into AIDS which leads to many painful HIV infections, hospitalization, and eventual death." (ECF No. 8 at 6.) Defendants argue that there was no adverse action against Reberger because they provided him "with his HIV medications at 12-hour intervals that coincide with when breakfast and dinner are served; thereby allowing [him] to take his medication with food." (ECF No. 189 at 9.) In addition, Defendants point out that their "administration of [Reberger's] HIV medication…is in compliance with the prescribing guidelines set forth by [his] HIV medication prescriber." (*Id.*)

In support of their claim, Defendants again point out that Carol Meyers, the nurse practitioner who prescribes Reberger's HIV medication, stated that he takes his HIV medications "between the hours of 5-7 a.m. and 5-7 p.m. … This regiment is appropriate for the management of his HIV." (ECF No. 189 at Ex. C, ¶ 5.) This disproves Reberger's assertion that Defendants are trying to manipulate his HIV medication timing in an attempt

to kill him. Reberger cannot satisfy the first element of the retaliation test because he is unable to present any facts demonstrating that Defendants took adverse actions towards him. Defendants were simply following the prescribing guidelines set forth by Reberger's HIV medication prescriber. (*Id.*)

Further, Reberger's medical records note that he:

> had multiple episodes of non-compliance with treatment and refusals…There is also the question of possible overdose of HIV meds, which may have caused the 1st seizure-like episode.[4] It is my belief that the patient could either make himself NPO,[5] stockpile (cheek) his HIV medication, and the overdose on it…in an effort to leave ESP.

(ECF No. 191, at Ex. A, p. 6.)

Reberger is unable to demonstrate Defendants denial of his request to have his HIV medications KOP did not reasonably advance a legitimate correctional goal because Defendants believed that he was intentionally overdosing on his medications when he was permitted to have them KOP. Accordingly, Reberger is also unable to satisfy the fifth element of the retaliation test. For all the reasons listed above, the Court recommends that Defendants' Motion for Summary Judgment as to Count II be granted.

### C. Qualified Immunity

#### 1. Legal Standard

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face

---

[4] NDOC medical staff previously suspected Reberger of intentionally overdosing on his medications, resulting in seizure-like symptoms.

[5] Nil per os (npo or NPO), a Latin phrase that translates literally to English as "nothing through the mouth".

other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

In *Saucier v. Katz*, the United States Supreme Court developed a two-pronged inquiry for determining when summary judgment based on qualified immunity is appropriate. As a threshold matter, a court must ask whether "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right?" If no constitutional violation would exist even if the allegations are taken as true, the inquiry ends, and a finding of qualified immunity is appropriate. However, if the parties' submissions indicate a possible constitutional violation, the reviewing court must assess whether the constitutional right was clearly established at the time of the alleged violation. If the law does not put an officer on notice that his conduct is clearly unlawful, summary judgment based on qualified immunity is still appropriate. When a law or right is clearly established, a defendant's act will be protected by qualified immunity if the defendant "reasonably believe[d] that his or her conduct complie[d] with the law." *Pearson*, 555 U.S. at 244.

2. *Analysis*

Defendants argue that even if the Court finds that their actions constituted deliberate indifference or retaliation, they are entitled to qualified immunity. (ECF No. 189

at 10 – 13.) Defendants maintain that all they did was administer Reberger's HIV medications as prescribed, and in accordance with the drug manufacturer's instructions. (*Id.* at 9 – 10.) Regarding the first prong of the qualified immunity test, i.e., whether there was a constitutional violation, Defendants are entitled to qualified immunity because there was no constitutional violation as they were not deliberately indifferent to a serious medical need. Accordingly, on this separate basis, the Court recommends that Defendants' Motion for Summary Judgment as to Counts I and II be granted.

## IV.   CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 189) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that judgment be entered accordingly and this case be closed.

**DATED**: February 8, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**